**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff-Appellee,**

v.

**PAN AMERICAN WORLD AIRWAYS, INC., Defendant-Appellant.**

No. 85–2840.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 17, 1986.

Decided Aug. 8, 1986.

Susan Riley, Attorney, Dianna Johnson, Attorney, E.E.O.C., Washington, D.C., for E.E.O.C.

Sanford Jay Rosen, Law Offices of Sanford Jay Rosen, James C. Sturdevant, Law Offices of James C. Sturdevant, San Francisco, Cal., for Fomer Pan American Pilots.

Denis F. Gordon, Gordon & Barnett, Washington, D.C., Kenneth N. Silbert, Beeson, Tayer & Silbert, San Francisco, Cal., for appellee NAL Chapter, FEIA.

Robert S. Venning, Heller, Ehrman, White & McAuliffe, San Francisco, Cal., for defendant-appellant.

Before CHOY, HUG and WIGGINS, Circuit Judges.

PER CURIAM.

Pan American World Airways, Inc. (Pan Am) appeals from a district court order disapproving a proposed consent decree between Pan Am and the Equal Employment Opportunity Commission (EEOC) that would have settled an EEOC suit claiming age discrimination in Pan Am's employment policies involving pilots and flight engineers. We conclude that we have no jurisdiction and dismiss.

## FACTS AND PROCEEDINGS BELOW

EEOC filed an action against Pan Am alleging violation of the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. § 626(b), by Pan Am's refusal to employ persons between the ages of 60 and 70 as flight engineers.[1] Pan Am filed additional pleadings bringing the two unions involved, the Airline Pilots Association (ALPA) and the Flight Engineers International Association (FEIA), into the action so as to bind them in case the district court decree required modification of Pan Am's collective bargaining agreements with them.

In May 1983, Pan Am and the EEOC reached a settlement agreement under which Pan Am would allow flight engineers to work until age seventy and would allow pilots who had been forcibly retired to return and retrain as flight engineers if they wished.[2] Pan Am also agreed to pay equal shares of a total $250,000 single payment to those forcibly-retired employees who elected not to return. The settlement also provided a procedure allowing pilots in the future reaching the age of sixty to "bump" more junior flight engineers.

This settlement was agreed to by Pan Am and the EEOC and, after some modification, by the ALPA and the FEIA. The settlement was opposed by six individual claimants and the National Airline Chapter

---

1. Because we conclude we have no jurisdiction over the appeal, we need not detail the specifics of the Pan Am employment policies and the EEOC's objections to them. The merits of the case generally revolve around the permissibility of forbidding pilots who reach the (FAA-mandated) retirement age of 60 to "bump" flight engineers with less seniority and assume their jobs, which are not age-regulated by the FAA.

2. This continued employment or reemployment was subject to the employee meeting the physical and skills requirements of the job.

of FEIA (NAL–FEIA).[3] The district court (Ingram, J.) refused to enter this proposed consent decree on the ground that the law in this area of the ADEA was uncertain and noted that the Supreme Court had granted certiorari in a case on a similar issue. *E.E.O.C. v. Pan American World Airways*, 34 Fair Emp.Prac.Cas. (BNA) 321 (N.D.Cal.1984). The court also denied Pan Am's motion for reconsideration of the refusal.

Pan Am appealed the denial of its motion to enter the proposed consent decree but sought and received a limited remand after the Supreme Court's decision in *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985). Pan Am and the EEOC then proposed a new consent decree, increasing the payment total to $1.5 million, spreading the payment over three years without interest, broadening the coverage of the payments to include those who elect to return to work, and varying the amount each claimant receives according to the length of time since the individual's forced retirement. Pan Am, the EEOC, and the ALPA agreed to the new terms, and the FEIA offered no objections. The NAL–FEIA again objected, as did 45 of the 81 affected claimants.

In a thorough memorandum, the district court (Peckham, J.) disapproved the proposed revised consent decree. *See E.E.O.C. v. Pan American World Airways, Inc.*, 622 F.Supp. 633, 648–49 (N.D.Cal. 1985). Pan Am timely appeals.

## APPELLATE JURISDICTION

Before we may reach the merits of this appeal, we must determine whether we have jurisdiction. *See Pizza of Hawaii, Inc. v. Shakey's, Inc. (In re Pizza of Ha-*

*waii, Inc.)*, 761 F.2d 1374, 1377 (9th Cir. 1985).

In its opening brief, Pan Am asserts that we have jurisdiction under 28 U.S.C. § 1292(a) (1982) because the district court order denies injunctive relief.[4] The controlling case on this issue is *Carson v. American Brands, Inc.*, 450 U.S. 79, 101 S.Ct. 993, 67 L.Ed.2d 59 (1981). In *Carson*, the Supreme Court effectively set forth three requirements for determining whether an interlocutory order denying a joint motion for entry of a consent decree is an appealable order pursuant to section 1292(a)(1). First, the interlocutory order must have the practical effect of denying an injunction. *Id.* at 83–84, 101 S.Ct. at 996. Second, the order must have "serious, perhaps irreparable, consequence." *Id.* at 84, 101 S.Ct. at 997. Finally, the order must be one that can be "effectively challenged" only by immediate appeal. *Id.*

Pan Am fails to meet the "denial of an injunction" requirement of *Carson*. Although the disapproved consent decree clearly involved injunctive relief (primarily the modification of Pan Am's cockpit staffing policies), that injunctive relief was sought by the *appellee* EEOC, not by *appellant* Pan Am. *See Liberty Mutual Insurance Co. v. Wetzel*, 424 U.S. 737, 744–45, 96 S.Ct. 1202, 1206–07, 47 L.Ed.2d 435 (1976) (holding that jurisdiction lies under section 1292(a)(1) only if the party *taking the appeal* was denied injunctive relief).

Pan Am argues that it too was denied injunctive relief in that part of the proposed consent decree that would have amended the current collective bargaining agreements with ALPA and FEIA in accordance with the relief granted to the EEOC.

---

**3.** The NAL–FEIA is an independent unit within the FEIA that exists as a result of the merger between Pan Am and National Airlines (NAL). The employment structures of pilots and flight engineers for the two airlines differed markedly, and employees of the present Pan Am are treated differently in some respects depending on which airline they worked for before the merger. The NAL–FEIA has therefore continued to exist to protect the distinct interests of the former NAL employees.

**4.** 28 U.S.C. § 1292(a) (1982) provides in relevant part:

[T]he court of appeals shall have jurisdiction of appeals from:

(1) Interlocutory orders of the district courts of the United States ... or of the judges thereof, granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions....

Without the "injunctive relief" of that amendment, Pan Am argues, it cannot change its present policies to satisfy the EEOC without risking lawsuits by the unions charging breach of the unions' contracts. *See, e.g., W.R. Grace & Co. v. Local Union 759,* 461 U.S. 757, 103 S.Ct. 2177, 76 L.Ed.2d 298 (1983) (holding that employee may recover under collective bargaining agreement for injury caused by company's unilateral settlement of civil rights case with EEOC). Pan Am joined ALPA and FEIA for the very purpose of binding them to the judgment in the case, and the disapproval of the consent decree, Pan Am argues, prevents that. In the meantime, Pan Am asserts, it faces a real risk of suit if it breaches the unions' contracts unilaterally and mounting back pay claims if it doesn't.

We note, however, that the amendments to the collective bargaining agreement sought by Pan Am are a kind of "secondary" injunctive relief, made necessary only by the relief granted to the EEOC and *against* Pan Am. Pan Am seeks no modification of the collective bargaining agreement beyond that specifically required by the EEOC's suit. Because the consent decree has not been approved, the EEOC has not yet been granted any injunctive relief, and Pan Am does not need any injunctive relief against the unions.

Moreover, Pan Am's dilemma is at least partly speculative. Even if the denial of the current consent decree stands, the eventual revised decree or final judgment after trial might not require modifications in the collective bargaining agreement, the unions might not object to any changes that were made, or a successor collective bargaining agreement might be in effect that already takes into account the changes.[5] We thus conclude that disapproval of the consent decree in this case does not have the practical effect of denying Pan Am injunctive relief. *See Carson,* 450 U.S. at 83–84, 101 S.Ct. at 996.

■ Pan Am also fails to meet the requirement of "serious, perhaps irreparable, injury." *See Carson,* 450 U.S. at 84, 101 S.Ct. at 997. Pan Am claims that it, like the petitioner in *Carson,* is being denied the right to settle the suit on mutually agreeable terms. In *Carson,* however, the disapproval of the consent decree effectively forced the parties to trial. The district court in *Carson* refused to approve *any* remedial relief without a showing of actual past discrimination, a charge that the defendants continued to deny, and even then the court would grant relief only to actual victims of that past discrimination. *See Carson,* 450 U.S. at 87 n. 12, 101 S.Ct. at 998 n. 12. This refusal completely foreclosed any further settlement negotiations short of outright admission of discrimination by the defendants and complete restructuring of the class relief. *See id.*

In the present case, the district court's ground for disapproving the decree is not nearly so broad. The district court opinion focuses primarily on the inadequacy of the monetary settlement, and also mentions the strength of Pan Am's case and Pan Am's financial position. *See* 622 F.Supp. at 641–46. The opinion does not attack the underlying premise of the settlement (that Pan Am's previous policies violated the ADEA) nor the injunctive relief proposed by the parties (the modified policies and their binding force on the unions). The disapproval in no way inhibits further negotiations between the EEOC and Pan Am to meet the concerns raised. As a result, Pan Am is not being denied the right to settle the case on *any* mutually agreeable terms, as were the defendants in *Carson;* Pan Am is merely being denied the right to settle the case on the *particular* terms of the current proposed consent decree, which the district court found unreasonable. In light of this, Pan Am has not asserted a "seri-

---

5. We note, for example, that Pan Am by its own admission changed its cockpit staffing policy in 1983, moving in the general direction of the policy urged by the EEOC, and the airline has apparently had no trouble with its unions as a result.

ous, perhaps irreparable, harm" to itself from the disapproval of the decree.[6]

 In summary, Pan Am fails to meet the requirements for interlocutory appeal set forth in *Carson*,[7] and its appeal is DISMISSED for lack of jurisdiction.

6. Because Pan Am's appeal fails the first two requirements of the *Carson* test, we do not consider whether it meets the third requirement, that the order be one that can be effectively challenged only on immediate appeal.

7. Pan Am also asserts jurisdiction pursuant to 28 U.S.C. § 1291, relying on the *Cohen* doctrine in general and *Norman v. McKee*, 431 F.2d 769, 772–74 (9th Cir.1970), *cert. denied*, 401 U.S. 912, 91 S.Ct. 880, 27 L.Ed.2d 811 (1971), in particular. *Norman v. McKee* is indeed directly on point here, allowing defendants to appeal an order disapproving a consent decree that would have granted injunctive relief against them. The court reasoned that the consent decree was a collateral issue completely distinct from the merits of the case. *Id.* at 773.

Pan Am's reliance on *Norman*, however, fails in view of the Supreme Court's decision in *Carson*. *Carson* explicitly resolved a conflict among the circuits concerning whether and pursuant to what statute an interlocutory order disapproving a consent decree was appealable. The *Carson* opinion specifically cites *Norman v. McKee* as one of the conflicting cases. *See Carson*, 450 U.S. at 82 & n. 6, 101 S.Ct. at 996 n. 6. Although the Court in *Carson*, 450 U.S. at 83 n. 7, 101 S.Ct. at 996 n. 7, stated that it need not decide whether the order was appealable under section 1291, we conclude from footnote 6 that *Carson* was clearly intended to provide a definitive basis and standard for such interlocutory appeals, and thus overrules *Norman v. McKee*'s reliance on section 1291.