FRIENDS OF THE EARTH and Atlantic
States Legal Foundation,
Inc., Plaintiffs,

v.

EASTMAN KODAK
COMPANY, Defendant.

No. CIV–84–0316T.

United States District Court,
W.D. New York.

March 23, 1987.

Terris, Edgecombe, Hecker & Wayne, Washington, D.C., Allen, Lippes & Shonn, Buffalo, N.Y. (James M. Hecker, Washington, D.C., Richard J. Lippes, Buffalo, N.Y., of counsel), for plaintiffs.

Whiteman, Osterman & Hanna, Albany, N.Y. (Philip H. Gitlen, of counsel), for defendant.

## DECISION AND ORDER

TELESCA, District Judge.

Plaintiffs Friends of the Earth and the Atlantic States Legal Foundation, Inc. commenced this action against defendant Eastman Kodak Company (Kodak) under the citizen suit provision (§ 505) of the Clean Water Act, 33 U.S.C. § 1365, alleging over 380 violations of Kodak's State Pollutant Discharge Elimination System (SPDES)

permit for its Kings' Landing wastewater purification plant. Kodak has steadfastly maintained that the alleged violations were "exceedences" which were not actually violations of the permit. In their complaint, plaintiffs sought the following relief:

(a) a declaratory judgment that Kodak was in violation of the Clean Water Act;

(b) injunctive relief with respect to Kodak's operation of its Kodak Park facility;

(c) authorization for plaintiffs to sample, at Kodak's expense, Kodak's wastewater discharges;

(d) provision to plaintiffs of all reports submitted by Kodak to the Federal or State government regarding the SPDES permit, for one year after compliance with the SPDES permit was achieved;

(e) imposition of civil penalties of $10,000 per day of violation for each violation listed in the complaint;

(f) payment by Kodak of plaintiffs' attorneys' fees and costs.

After brief discovery, plaintiffs moved for partial summary judgment on the issue of Kodak's liability for any violations which Kodak had reported in its monthly discharge monitoring reports (DMRs). Kodak cross-moved for summary judgment on several grounds. On March 29, 1985, I denied the parties' motions for summary judgment, except that Kodak's motion for summary judgment as to the applicable statute of limitations was granted. I held specifically that material issues of fact existed with respect to whether Kodak had violated the SPDES permit as alleged by plaintiffs.

After this decision, the parties conducted further discovery, and settled the case. Under the terms of the settlement, Kodak made a contribution to the Conservation Foundation, while continuing in its position that no permit violations had actually occurred.

■ Kodak takes the position that its contribution of $49,000 was strictly a "nuisance settlement," representing the amount that Kodak was willing to pay solely to avoid having to go to trial on the merits of each of the violations alleged. Plaintiffs respond that the $49,000 is roughly double the average penalty assessed by the Environmental Protection Agency (EPA) in an enforcement proceeding, and does not represent a token payment. Plaintiffs also point to the fact that Kodak's "exceedences" have dropped from an average of around 60 per year to an average of around 15 per year since plaintiffs served notice of their intention to bring this lawsuit.

The parties agree that the controlling case in this area is *Ruckelshaus v. Sierra Club,* 463 U.S. 680, 103 S.Ct. 3274, 77 L.Ed.2d 938 (1983). In that case, which was brought under an attorney's fee provision of the Clean Air Act (§ 307(f)), 42 U.S.C. § 7607(f), the Supreme Court examined the statutory language (and the legislative intent behind it) which allows a court to award attorneys' fees and costs "whenever it determines that such award is appropriate." The Court held that,

absent some degree of success on the merits by the claimant, it is not "appropriate" for a federal court to award attorney's fees under § 307(f).

463 U.S. at 694, 103 S.Ct. at 3282. On the basis of the legislative history, the Court explained that a party did not have to be the "prevailing party" in order to recover attorneys' fees, but need only have "partially" prevailed, "achieving *some success,* even if not major success." *Id.* at 688, 103 S.Ct. at 3279 (emphasis in original). In a footnote, the Court explained that it did not mean to suggest that trivial success on the merits, or purely procedural victories, would justify an award of fees under such a statute, but that Congress had meant merely to avoid the necessity for lengthy inquiries into the question whether a particular party's success was "substantial" or occurred on a "central issue." *Id.* at Note 9.

Kodak argues that plaintiffs have failed to satisfy the prerequisites for an award of attorneys' fees in this case. Kodak argues that plaintiffs moved for summary judgment on the issue of Kodak's liability and lost; plaintiffs dropped their "central demand" for injunctive relief requiring Kodak to expand or improve its treatment

plant; and Kodak's contribution to an environmental organization was a small fraction of the amount sought by plaintiffs, reflecting only nuisance value of the lawsuit, not an admission of liability. Kodak argues that no court has ever awarded attorney's fees against a private defendant when the plaintiff did not prevail on the issue of whether the defendant violated the Clean Water Act. Kodak analogizes this case to *United States v. Hooker Chemicals & Plastics Corp.*, 591 F.Supp. 966 (W.D.N. Y.1984), in which Chief Judge Curtin denied attorneys' fees to intervenors whose only success had been the granting of their motion to intervene, and who had not contributed to a settlement approved by the Court in the same order in which the Court granted the motion to intervene.

I disagree with Kodak that the case can be analogized to *Hooker Chemicals.* Plaintiffs here instituted the lawsuit and pursued it to settlement. Significantly, plaintiffs proceeded further with this case than did the intervenors in the *Hooker* case. Plaintiffs introduced the DMRs as proof of the alleged violations, raising material questions of fact sufficient to allow this case to proceed to trial. Although the DMRs were prepared by Kodak itself, DMRs have held sufficient in other courts to entitle plaintiffs to summary judgment in their favor. *See, e.g., SPIRG v. Fritzsche, Dodge & Olcott,* 579 F.Supp. 1528 (D.N.J.1984), *aff'd,* 759 F.2d 1131 (3d Cir.1985); *see also SPIRG v. AT & T Bell Laboratories,* 617 F.Supp. 1190, 1204–06 (D.N.J.1985). Only because Kodak rebutted the DMRs with proof that they might not be conclusive evidence of violations, did I deny plaintiffs' motion for partial summary judgment. While plaintiffs certainly are not the "prevailing party" in this lawsuit, they nonetheless have enjoyed "some success" sufficient to entitle them to an award of attorneys' fees on the authority of *Ruckelshaus v. Sierra Club.*

It may be coincidence that the number of reported exceedences also dropped when plaintiffs notified Kodak of this contemplated lawsuit, but it is a remarkable coincidence nonetheless. At oral argument, Kodak's attorney stated that, when plaintiffs served notice on Kodak in the summer of 1983, Kodak's program to upgrade ⅓ of the treatment plant every summer had concluded. As plaintiffs point out, however, it was the number of exceedences prior to that summer that demonstrated the need for this lawsuit.

Moreover the contribution of $49,000 to the Conservation Foundation is a significant amount, even though Kodak characterizes it as representing payment for discontinuance of this case for nuisance value only. The scope of a consent decree must be discerned within its four corners, not by reference to what might satisfy the purposes of one of the parties to it. *Firefighters Local Union No. 1784 v. Stotts,* 467 U.S. 561, 754, 104 S.Ct. 2576, 2585, 81 L.Ed.2d 483 (1984).

■ The question remains, however, how the attorneys' fees should be set. Plaintiffs argue that I should apply the "lodestar" approach set forth in *City of Detroit v. Grinnell Corp.,* 495 F.2d 448 (2d Cir. 1974), and *New York State Ass'n for Retarded Children, Inc. v. Carey,* 711 F.2d 1136 (2d Cir.1983), and approved by the Supreme Court in *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983), and *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* —— U.S. ——, 106 S.Ct. 3088, 3097, 92 L.Ed.2d 439 (1986).[1] Under this method, the court merely multiplies the number of hours reasonably expended times a reasonable hourly rate, then may adjust the fee award to reflect other factors which are not reflected in the hourly rate.

---

**1.** *Hensley v. Eckerhart* is a civil rights case, while the *Delaware Valley* case involves a citizen suit under § 304 of the Clean Air Act. 42 U.S.C. § 7604. In *Delaware Valley,* the Supreme Court held that, given the common purpose of both Clean Air Act § 304 and 42 U.S.C. § 1988 to promote citizen enforcement of feder-

al policies, there was no reason not to interpret both provisions governing attorneys fees in the same manner. 106 S.Ct. at 3095–96. Because the Clean Water Act section under which this action is brought is virtually identical to § 304 of the Clean Air Act, there is no reason not to interpret it in the same manner.

Kodak has neither contested the plaintiffs' attorneys' hourly rate, nor the number of hours expended by plaintiffs' attorneys, except to argue that plaintiffs should not recover for the time spent preparing this application for fees. Kodak also argues that plaintiffs are not entitled to an upward adjustment of the lodestar.

Plaintiffs seek a lodestar of $62,381.05 for attorneys' fees on the merits of this case, and an additional lodestar of $15,995.45 for the attorneys' fees on this application. In addition, they seek to have added a 25% contingency bonus, to reflect the risk inherent in bringing this type of litigation, the skill of their attorneys, and the fact that they took the case on a contingent fee basis. Adding to this over $6,000 in costs requested, and the total award of attorneys' fees and expenses would be $105,212.72.

The Second Circuit in the *Grinnell* case (an antitrust case) described the adjustments to the lodestar as follows:

> We are not under the illusion that a "just and adequate" fee can necessarily be ascertained by merely multiplying attorney's hours and typical hourly fees. However, we are convinced that this simple mathematical exercise is the only legitimate starting point for analysis. It is only after such a calculation that other, less objective factors, can be introduced into the calculus.
>
> Perhaps the foremost of these factors is the attorney's "risk of litigation," *i.e.*, the fact that, despite the most vigorous and competent of efforts, success is never guaranteed. The greater the probability of success, of either ultimate victory on the merits or of settlement, the less this consideration should serve to amplify the basic hourly fee. The tangible factors which comprise the "risk of litigation" might be determined by asking the following questions: Has a relevant government action been instituted or, perhaps, even successfully concluded against the defendant; have related civil actions already been instituted by others; and, are the issues novel and complex or straightforward and well-worn? Thus

determined, the litigation risk factor might well be translated into mathematical terms.

The Supreme Court has since limited the factors which a district court may consider in determining whether to make adjustments to the lodestar amount. "[W]e specifically held in *Blum [v. Stenson*, 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984),] that the 'novelty (and) complexity of the issues,' 'the special skill and experience of counsel,' the 'quality of representation,' and the 'results obtained' from the litigation are presumably fully reflected in the lodestar amount, and thus cannot serve as independent bases for increasing the basic fee award. *Id.*, at 898–900 [104 S.Ct. at 1548–49]. Although upward adjustments of the lodestar figure are still permissible, *id.*, at 901 [104 S.Ct. at 1550], such modifications are proper only in certain 'rare' and 'exceptional' cases, supported by both 'specific evidence' on the record and detailed findings by the lower courts. See *id.*, at 898–901 [104 S.Ct. at 1548–50]. *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, —— U.S. ——, 106 S.Ct. 3088, 3098, 92 L.Ed.2d 439 (1986).

The *Delaware Valley* Court's concern, however, was with the lower courts' reliance on the quality of the attorneys when the lower courts adjusted the lodestar upward. The Court pointed out that plaintiff had produced no evidence that the results it had obtained were "outstanding," 106 S.Ct. at 3100. Moreover, earlier the same term, the Court, citing *Hensley v. Eckerhart*, 461 U.S. 424, 434–35, 103 S.Ct. 1933, 1939–40, 76 L.Ed.2d 40 (1983), discussed factors that might lead the district court to adjust the lodestar figure upward or downward, including the "important factor of the results obtained." *City of Riverside v. Rivera*, —— U.S. ——, 106 S.Ct. 2686, 2691, 91 L.Ed.2d 466 (1986). Although fee awards in civil rights cases should not necessarily be proportionate to the amount of damages a plaintiff actually recovers, the amount of damages is "certainly relevant to the amount of attorney's fees to be awarded...." *Id.*, at 2694.

The Second Circuit has held that a significant risk of losing coupled with a contingent fee arrangement may be sufficient to justify a bonus. *Lewis v. Coughlin,* 801 F.2d 570, 576 (2d Cir.1986).[2] The Second Circuit has also held, however, (in a case cited by the *Riverside* Court, *supra,* 106 S.Ct. at 2695) that the results obtained by the litigation must be taken into account:

> ... A court need not grant a fee request where the plaintiff has only marginally prevailed and received nominal damages. The [civil rights attorney's fee] statute vests discretionary authority in the district court to consider whether fees should be awarded, and the degree to which plaintiff prevailed is a factor that the courts may consider in exercising this discretion.
>
> \*　\*　\*　\*　\*　\*
>
> A crucial factor underlying the determination whether a full award of attorney's fees is appropriate where a party has succeeded on only some of his claims, is the degree to which the meritorious claims are clearly separable from the unsuccessful ones.... Where the claims are separable, and one or more are found to be without merit, then the district court should decline to award that portion of the requested fees which relates to the unsuccessful claim. This rule serves the purpose of discouraging parties from adding insubstantial or frivolous claims to potentially legitimate ones....

*McCann v. Coughlin,* 698 F.2d 112, 128, 129–30 (2d Cir.1983). *See also DiFilippo v. Morizio,* 759 F.2d 231 (2d Cir.1985).

Applying such factors, I conclude that the lodestar should be adjusted downward in this case. Virtually all of plaintiff's proof in this case came from DMRs prepared by defendant and required to be filed with governmental agencies. Although (as set forth above) I believe the $49,000 settlement in this case is evidence of "some success" by plaintiffs, it is not evidence of outstanding or significant success given the number of violations alleged, the amounts sought in the complaint, and the fact that defendant supplied plaintiffs with any proof of their case. Accordingly, I am adjusting the lodestar downwards to $30,000.

This downward adjustment is not intended to minimize the important role played by citizen suit plaintiffs in the regulatory scheme of the Clean Water Act and other similar environmental legislation. Nor is it intended as a criticism of plaintiffs' attorney, whose work, as usual, was excellent. Nevertheless, when a citizen suit is begun by plaintiffs solely on the basis of DMRs filed by a defendant, and yet concludes in a settlement which shows minimal evidence of success, I believe it indicates that there was not much of a pollution problem to begin with, and therefore the award should adjusted downwards to reflect that state of affairs.

Accordingly, plaintiffs' application for attorneys' fees and costs is granted in the amount of $30,000.

ALL OF THE ABOVE IS SO ORDERED.

---

**2.** The Supreme Court left this question open for reargument in the *Delaware Valley* case. 106 S.Ct. at 3100.