**SIERRA CLUB, INC., Plaintiff,**

v.

**ELECTRONIC CONTROLS DESIGN, INC., Defendant.**

**Civ. No. 87–905–MA.**

United States District Court, D. Oregon.

Jan. 6, 1989.

Victor M. Sher, Todd D. True, Corrie J. Yackulic, Sierra Club Legal Defense Fund, Inc., Seattle, Wash., Richard A. Parrish, Portland, Or., for plaintiff.

Richard S. Gleason, Steven L. Pfeiffer, Stoel, Rives, Boley, Jones & Grey, Portland, Or., for defendant.

Roger J. Marzulla, Asst. Atty. Gen., Charles J. Sheehan, Atty., Land & Natural Resources Div., Policy, Legislation and Sp. Litigation Section, Washington, D.C., Charles H. Turner, Thomas C. Lee, U.S. Atty.'s Office, Portland, Or., for U.S.

### OPINION

MARSH, District Judge.

#### INTRODUCTION

This action was filed by the Sierra Club pursuant to the citizen suit provision of the Federal Water Pollution Control Act ("Clean Water Act" or "Act"), 33 U.S.C. § 1365(a). This section states that "any citizen may commence a civil action on his

own behalf" against any person who is in violation of the Act. The Sierra Club alleges that Electronic Controls Design ("ECD") violated § 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), by discharging pollutants from its printed circuit board manufacturing plant into the Molalla River via Milk Creek. These discharges were allegedly in violation of the terms of their National Pollutant Discharge Elimination System (NPDES) permit. The complaint requests declaratory and injunctive relief, the imposition of civil penalties of $25,000 per day of violation, and litigation costs, which include reasonable attorney fees.

Shortly after filing this suit, ECD's permit performance improved and the parties entered into settlement negotiations. These negotiations led to the creation and submission of the Consent Judgment, which is the subject of this dispute.

The Consent Judgment provides that the ECD is to pay a total of $45,000 to the Sierra Club Legal Defense Fund (as trustee), which will in turn distribute the money to designated private, nonprofit environmental organizations. The money will go to support projects dedicated to maintaining and protecting water quality in Oregon. The Consent Judgment also provides that ECD will pay liquidated damages to these same organizations for all future violations (if any) occurring between September 1, 1988 and June 1, 1989. If the permit is violated thereafter, ECD must immediately terminate *all* discharges.

In accordance with § 505(c)(3) of the Clean Water Act, 33 U.S.C. § 1365(c)(3), the United States was served with this proposed Consent Judgment. On November 15, 1988, the United States objected to the proposed Judgment, claiming that it is "at odds with the [Clean Water] Act," because the money to be paid by ECD under the settlement goes to private organizations rather than the federal Treasury.

STANDARD OF REVIEW

The parties to a case may always compromise their dispute. *See United States v. Armour & Co.*, 402 U.S. 673, 681, 91 S.Ct. 1752, 1757, 29 L.Ed.2d 256 (1971). However, where the parties wish to incorporate their settlement into a judicial decree, the court must give the agreement more careful scrutiny. *United States v. City of Miami,* 664 F.2d 435, 441 (5th Cir. 1981). "The court must assure itself that the proposed consent decree is fair, reasonable, and equitable ... and that the decree does not violate the law or public policy." *Sierra Club v. Coca–Cola Corp.,* 673 F.Supp. 1555, 1556 (M.D.Fla.1987) (reviewing consent decree proposed by government under Clean Water Act). Moreover, where the claim seeks to enforce a statute, "the most important factor as to public policy is whether the decree comports with the goals of Congress." *Id., citing City of Miami,* 664 F.2d at 441.

DISCUSSION

Application of this standard requires an analysis of the citizen suit provision of the Clean Water Act. "Section 505 [33 U.S.C. § 1365(a)] evidences a congressional intent to carefully channel public participation in the enforcement of the Act." *City of Evansville, Ind. v. Kentucky Liquid Recycling, Inc.,* 604 F.2d 1008, 1015 (7th Cir.1979) (footnote omitted). An examination of the language of the provision, as well as the legislative history, demonstrates conclusively that its sole purpose is to provide private parties with a mechanism to compel enforcement of effluent standards promulgated pursuant to the Act. *Id.* at 1014. Moreover, the district court's jurisdiction to entertain a citizen action "is limited to enforcing the effluent standard or limitation, ordering the administrator to perform a nondiscretionary act, and imposing civil penalties under 33 U.S.C. § 1319(d)." *City of Philadelphia v. Stepan Chemical Co.,* 544 F.Supp. 1135, 1145–46 (E.D.Pa.1982). Thus, the relief authorized by the Act under the citizen suit provision is purely prospective. Nowhere does it authorize a private party to recover damages for violations of the Act. *Id.; City of Evansville, Ind.,* 604 F.2d at 1014–15.

The legislative history surrounding the Clean Water Act also makes it clear that civil penalties under 33 U.S.C. § 1319(d) are to be paid to the federal Treasury. "The

[civil] penalties imposed [are to be] deposited as miscellaneous receipts in the treasury and [are] not to be recovered by the citizen bringing the suit." H.R.Rep. No. 92–911, 92d Con., 2d Sess. 133, U.S.Code Cong. & Admin.News 1972, p. 3668, *reprinted in 1 A LEGISLATIVE HISTORY OF THE WATER POLLUTION CONTROL ACT AMENDMENTS OF 1972* 753, 820 (1973).[1] This assures that citizen suits are brought to vindicate the public health and welfare rather than promote purely private interests. *See Middlesex County Sewerage Auth. v. National Sea Clammers Ass'n,* 453 U.S. 1, 18 n. 27, 101 S.Ct. 2615, 2625 n. 27, 69 L.Ed.2d 435 (1981).

In view of these unequivocal expressions of legislative intent, it appears that all civil penalties imposed under the Act are to be paid to the Treasury.[2] The Sierra Club claims, however, that the money to be paid under the Consent Judgment is not "intended to be a fine or other penalty." *Proposed Consent Judgment,* para. VII n. 5. "Because this Consent Judgment arises before trial of any fact and without adjudication of liability in this case, payments by ECD simply are not 'civil penalties.'" *Sierra Club's Response,* 10.

This assertion is without merit. The Consent Judgment specifically notes that the basis for this claim is the Clean Water Act. Under the Act, a private citizen's remedies are strictly limited to injunctive relief and civil penalties. The Sierra Club has failed to explain why a settling plaintiff should be entitled to collect money from a defendant when a private plaintiff who proceeds to litigate his claim under the Clean Water Act may not. On the contrary, the unambiguous legislative history associated with the disposition of civil penalties implies that the Act proscribes the remedies available in both settlement and litigation.

Furthermore, if the money to be paid under the settlement is not a penalty or fine, it must be some form of damages. In *City of Philadelphia v. Stepan Chemical Co.,* 544 F.Supp. 1135, 1146 (E.D.Pa.1982), the City brought a citizen suit under the Clean Water Act to recover its "costs of removal" related to the discharge of hazardous substances by the defendant. The court held that "[h]owever it chooses to characterize its remedy, the simple truth is that the City wants [damages] and section 505(a) does not authorize such a claim." The "labelling" of the remedy, therefore, clearly does not control. *Id.*

The fact that the Sierra Club specifically requests litigation costs in the Consent Judgment also indicates that the money to be paid by ECD is a civil penalty. Under the Act, litigation costs may only go to the "substantially prevailing party." 33 U.S.C. § 1365(d). If the Club is indeed the prevailing party in a citizen suit based on the Clean Water Act, clearly the money received must be a civil penalty, the only monetary penalty permitted under the Act.

There is also evidence, however, that Congress encourages settlements that put money directly to use in protecting the environment. In the legislative history of the 1987 amendments to the Clean Water Act, Congress stated that:

> In certain instances settlements of fines and penalties levied due to NPDES permit and other violations have been used to fund research, development and other related projects which further the goals of the Act.

H.R.Conf.Rep. No. 1004, 99th Cong., 2d Sess. 139 (1986), *reprinted at* 132 Cong. Rec. H10,571 (daily ed. Oct. 15, 1986). In fact, Congress "encourages" settlements of this type "which preserve the punitive nature of enforcement actions while putting the funds collected to use on behalf of environmental protection." *Id.*

---

1. "If a citizen prevails in [a citizen's suit], the court may order injunctive relief and/or impose a civil penalty payable to the U.S. Treasury." *Gwaltney of Smithfield v. Chesapeake Bay Foundation, Inc.,* 484 U.S. 29, 108 S.Ct. 376, 379, 98 L.Ed.2d 306 (1987).

2. However, as will be discussed below, the legislative history to the Clean Water Act also authorizes payment to other governmental agencies or programs responsible for furthering the goals of the Act.

This provision appears to authorize consent decrees such as the one before this court. However, this legislative history does not explicitly say that civil penalties may be paid directly to private organizations who have complete discretion as to how those funds should be spent. Such an interpretation would be in direct conflict with previous legislative history which clearly states that such penalties may not go to private persons. It does indicate, however, that there is some flexibility in fashioning a settlement wherein penalty monies can be directly channeled towards environmental projects, but perhaps not through private entities.

The Sierra Club also argues that in reaching a consent agreement, the parties have considerable latitude in deciding their own terms and are not limited to relief that a court could provide on the merits. *See Local Number 93, International Ass'n of Firefighters, AFL–CIO v. Cleveland*, 478 U.S. 501, 525, 106 S.Ct. 3063, 3077, 92 L.Ed. 2d 405 (1986). While the parties are given some latitude in fashioning their own remedy, where the suit seeks to enforce a statute, the settlement terms must be in accordance with congressional goals. *United States v. City of Miami*, 664 F.2d 435, 441 (5th Cir.1981). Further, the "parties may [not] agree to take action that conflicts with or violates the statute upon which the complaint was based." *Local Number 93*, 478 U.S. at 526, 106 S.Ct. at 3077. "The district court's authority to adopt a consent decree comes only from the law the decree was intended to enforce." *Washington v. Penwell*, 700 F.2d 570, 574 (9th Cir.1983) (citation omitted) (consent decree which requires more than that necessary to alleviate violation of federal law is unenforceable).

The Sierra Club argues that the Consent Judgment does comport with congressional goals because it compels ECD to comply with the terms of its permit or halt all discharges. Clearly this provision of the Consent Judgment is in the public interest. But the consent decree goes farther than that by authorizing the payment of civil penalties to a private organization in direct contradiction to clear legislative intent. As such, the settlement would be in direct violation of the statute, despite the fact that these environmental organizations will apply the money in ways that will help further the goals of the Act.

The Sierra Club refers to five "court-approved" consent judgments that do not dictate that payments go to the Treasury. *See Plaintiff's Exhibits A—D.* Of the five, only two have provisions designating a private organization as the sole recipient of the civil penalties. *See Sierra Club v. Port Townsend Paper Corp.*, Civ. No. C87–316C (W.D.Wa. Oct. 28, 1988) (Nature Conservancy) (Exh. A); *Friends of the Earth v. Eastman Kodak Co.*, 656 F.Supp 513 (W.D.N.Y.1987) (Conservation Foundation). *See also Natural Resources Defense Council v. Duquesne Light Co.*, Civ. No. 87–0511 (D.Pa. Aug. 14, 1987) ($40,000 to Western Pennsylvania Conservancy with penalties generated by future violations going to state Clean Water Fund) (Exh. C).

In contrast, in *NRDC v. Pennsylvania Electric Co.*, Civ. Nos. 87–0512 & 87–0513 (W.D.Pa. Aug. 25, 1987) (Exh. B), all monies were to be paid to a state organization, the Pennsylvania Clean Water Fund. Likewise, in *Charleston Properties v. United States*, No. C–87–20502 (N.D.Cal.1988) (Exh. D), the money was to go to an entity selected by the United States, and it was contemplated that the City of Palo Alto would be that entity. In light of these five cases, only two of which directly support the plaintiff's position, it is error to say courts have routinely approved consent judgments which designate private organizations as the sole recipient of the civil penalties imposed under the Clean Water Act.

The parties have submitted this Consent Judgment to the court for its approval. As such, the court must assure itself that the consent decree is lawful and in accordance with congressional goals under the Clean Water Act. The legislative history surrounding the Clean Water Act is unequivocal; civil penalties under the Act are not to be paid to private persons. A consent decree which permits a private entity to uni-

laterally designate the recipients of the civil penalties as well as how that money will be spent gives private individuals suing under the Clean Water Act authority Congress clearly did not intend them to have. Therefore, I cannot approve the Consent Judgment in its present form.

Nevertheless, settlement is to be encouraged, and even nurtured when necessary. This is especially true where "voluntary compliance by the parties over an extended period will contribute significantly toward ultimate achievement of statutory goals." *Metropolitan Housing Dev. Corp. v. Arlington Heights,* 616 F.2d 1006, 1014 (7th Cir.1980). Therefore, while I will not approve the Consent Judgment as it exists now, I will approve a Consent Judgment which designates the Oregon Water Quality Program as the civil penalty recipient.

Courts have approved consent decrees wherein civil penalties are paid to the state water pollution fund. *See NRDC v. Pennsylvania Electric Co.,* Civ. Nos. 87–0512 & 87–0513 (W.D.Pa. Aug. 25, 1987); *Natural Resources Defense Council v. Duquesne Light Co.,* Civ. No. 87–0511 (D.Pa. Aug. 14, 1987). The legislative history surrounding the Clean Water Act also indicates that civil penalties may be used to directly fund public, as opposed to private, environmental protection projects. Such a scheme guarantees that the penalties will be used to maintain or improve water quality within the affected state. More importantly, however, the money goes to a public body directly accountable to the general population. All parties can thus rest assured that the penalties will be used to fund public water projects, as was intended by the Act, rather than subsidize or promote private interests.

CONCLUSION

The primary reason for imposing civil penalties is to deter water pollution and provide restitution to restore waters. *Tull v. United States,* 481 U.S. 412, 107 S.Ct. 1831, 1838, 95 L.Ed.2d 365 (1987). Clearly this will be the end result if the Oregon Water Quality Program disperses the monies made available under the Consent Judgment. The Sierra Club initially brought this suit to vindicate the public interest. I strongly encourage the parties to amend the Consent Judgment as recommended so that it conforms with the spirit and the letter of the Clean Water Act.