**SIERRA CLUB, INC.,**
**Plaintiff–Appellant,**

v.

**ELECTRONIC CONTROLS DESIGN,**
**INC., Defendant–Appellee.**

**No. 89–35120.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 11, 1990.

Decided Aug. 1, 1990.

---

**1352**

Victor M. Sher, Sierra Club Legal Defense Fund, Seattle, Wash., for plaintiff-appellant.

Amelia S. Salzmans, Anne H. Shields, Attys., Dept. of Justice, Washington, D.C., for amicus.

Before GOODWIN, Chief Judge, and FERGUSON and FERNANDEZ, Circuit Judges.

GOODWIN, Chief Judge:

Sierra Club, Inc. appeals the refusal to enter a proposed consent judgment in its citizens' suit against Electronic Controls Design (ECD) for alleged violations of the Federal Water Pollution Control Act ("Clean Water Act" or "the Act"), 33 U.S.C. § 1365 (1988). We reverse.

On February 23, 1987, the Sierra Club filed a citizens' suit against ECD under section 505 of the Clean Water Act, 33 U.S.C. § 1365. *See Sierra Club, Inc. v. Electronic Controls Design,* 703 F.Supp.

875, 875–76 (D.Or.1989). The complaint alleged that ECD violated section 301(a) of the Act, 33 U.S.C. § 1311(a), by discharging pollutants from its printed circuit board manufacturing plant into the Molalla River via Milk Creek, in violation of the terms of ECD's National Pollutant Discharge Elimination System (NPDES) permit.[1]

On September 30, 1988, the parties filed a Stipulation for Entry of Consent Judgment. In the proposed judgment, ECD agreed to: (1) comply with the terms of its NPDES permit and to terminate all discharges if it violates its permit after June 1, 1989; (2) pay $45,000 to various identified private environmental organizations for their efforts to maintain and protect water quality in Oregon; (3) pay additional sums to these organizations if ECD violates its permit between September 1, 1988, and June 1, 1989; and (4) pay $5000 to the Sierra Club for attorney and expert witness fees. In the consent judgment ECD did not admit any violation, and none was established.

The United States filed an objection to the proposed consent judgment,[2] arguing that the proposed judgment was illegal because it contained no requirement that ECD make payments to the U.S. treasury. The Clean Water Act authorizes the imposition of civil penalties only if paid to the federal treasury. The district court concluded that the payments to be made under the proposed consent judgment were civil penalties within the meaning of the Act and therefore refused to enter the order. *Sierra Club,* 703 F.Supp. at 876–77.

---

**1.** "The holder of a state NPDES permit is subject to both federal and state enforcement action for failure to comply. [33 U.S.C] §§ 1319, 1342(b)(7). In the absence of federal or state enforcement, private citizens may commence civil actions against any person 'alleged to be in violation of' the conditions of either a federal or state NPDES permit. [33 U.S.C.] § 1365(a)(1)." *Gwaltney of Smithfield v. Chesapeake Bay Foundation, Inc.,* 484 U.S. 49, 53, 108 S.Ct. 376, 379, 98 L.Ed.2d 306 (1987).

**2.** Section 505(c)(3) of the Clean Water Act, 33 U.S.C. § 1365(c)(3), requires that the United States be given 45 days to review a proposed consent judgment in an action to which it is not

a party. If it finds that the proposed judgment is not in accordance with the Act, the United States can object.

The Clean Water Act also requires citizens to serve copies of their 60–day notice of intent-to-sue letter on both the United States and the appropriate state prior to filing suit. 33 U.S.C. § 1365(b)(1)(A). The Sierra Club complied with this requirement in the present action and neither the United States nor the Oregon Department of Environmental Quality moved to intervene. *See* 33 U.S.C. § 1365(b)(1)(B) (citizen plaintiff cannot proceed with suit if the EPA or state elects to commence its own enforcement action).

Recognizing "that Congress encourages settlements that put money directly to use in protecting the environment", the court also reasoned that a settlement could dictate that money be "channeled towards environmental projects, but perhaps not through private entities [such as those in this proposed consent judgment]." *Id.* at 877–78. Accordingly, the court indicated that it would approve a consent judgment designating the Oregon Water Quality Program as the "civil penalty recipient." *Id.* at 879.

## JURISDICTION

As a threshold issue we must determine whether we have jurisdiction to hear this timely appeal. As a general rule, the courts of appeals have jurisdiction only over final decisions of the district court which "end the litigation on the merits". *See Van Cauwenberghe v. Baird,* 486 U.S. 517, 521–22, 108 S.Ct. 1945, 1949–50, 100 L.Ed.2d 517 (1988) (quoting *Catlin v. United States,* 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911 (1945)). Congress has created certain exceptions. *See Carson v. American Brands, Inc.,* 450 U.S. 79, 83, 101 S.Ct. 993, 996, 67 L.Ed.2d 59 (1981). Pursuant to 28 U.S.C. § 1292(a)(1), the courts may hear appeals from "[i]nterlocutory orders of the district courts ... granting, continuing, modifying, refusing or dissolving injunctions...." In 1981, the Supreme Court held that an interlocutory order denying a motion to enter a consent decree providing injunctive relief may be appealable under 28 U.S.C. § 1292(a) as an order refusing an injunction. *See Carson,* 450 U.S. 79, 101 S.Ct. 993. *See also EEOC v. Pan American World Airways, Inc.,* 796 F.2d 314 (9th Cir.1986) (adopting the *Carson* analysis), *cert. denied,* 479 U.S. 1030, 107 S.Ct. 874, 93 L.Ed.2d 829 (1987).

In *Carson* the Court effectively set forth a tripartite test to determine when an order denying a motion to enter a consent judgment may be appealable pursuant to 28 U.S.C. § 1292(a)(1). First, the interlocutory order must have the practical effect of denying an injunction. *Id.,* 450 U.S. at 83–84, 101 S.Ct. at 996–97. Second, the order must have "serious, perhaps irreparable consequences." *Id.* at 84, 101 S.Ct. at 996. Finally, the order must be one that can be "effectually challenged" only by immediate appeal. *Id.*

The United States does not contest that the proposed consent judgment contained injunctive relief. It argues instead that injunctive relief was not denied because the district court stated its willingness to accept the judgment's injunctive aspects. According to *Carson,* however, an order need only have the "practical effect" of denying an injunction to be appealable. *Carson,* 450 U.S. at 83, 101 S.Ct. at 996. Because the court refused to enter the entire consent judgment, its denial had the practical effect of denying an out-of-court settlement containing injunctive relief.

We also find that the district court's refusal to enter the proposed consent judgment may result in serious and perhaps irreparable harm that can be challenged effectively only by immediate appeal. *Carson,* 450 U.S. at 84, 101 S.Ct. at 996. Like the appellant in *Carson,* the Sierra Club was denied the injunctive relief settled upon until the case is finally resolved. *See also Durrett v. Housing Auth. of the City of Providence,* 896 F.2d 600, 602 (1st Cir. 1990) (serious consequences found where denial of consent decree would delay improvement of substandard housing). Moreover, if the district court were correct in characterizing the payments required by the proposed consent judgment as civil penalties, unlawful under the Clean Water Act, further settlement negotiations between the parties could not continue unless the ECD agreed to pay penalties to the U.S. treasury. If we were to deny review of the rejection of the proposed consent judgment at this juncture and allow the case to continue to trial, the validity of the consent judgment could be moot and unreviewable following a final judgment on the merits. The loss of an opportunity to effectively challenge an order that denies the parties injunctive relief "plainly has 'serious, perhaps irreparable consequences.'" *Carson,*

450 U.S. at 86, 101 S.Ct. at 997.[3] We therefore conclude that jurisdiction exists under 28 U.S.C. 1292(a)(1).[4]

## THE MERITS

■ Section 505 of the Clean Water Act authorizes any citizen to commence an action against any person who is alleged to be in violation of the Act. 33 U.S.C. § 1365(a). A citizen can seek injunctive relief and civil penalties. *Id. See generally* J. Miller, *Citizens Suits: Private Enforcement of Federal Pollution Control Laws,* § 8.4, 89 (1987); 18 Env't Rep. (BNA) No. 19, Special Report at 51–59 (Sept. 4, 1987). The district court held that the monetary payments agreed to in the settlement were civil penalties within the meaning of the Act and that all civil penalties must be paid to the federal treasury. The court therefore concluded that the settlement was illegal.

■ We agree with the district court that if the payments required under the proposed consent decree are civil penalties within the meaning of the Clean Water Act, they may be paid only to the U.S. treasury. We disagree, however, that the payments are civil penalties. No violation of the Act was found or determined by the proposed settlement judgment. When a defendant agrees before trial to make payments to environmental organizations without admitting liability, the agreement is simply part of an out-of-court settlement which the parties are free to make.

The Supreme Court has stated on two occasions that civil penalties imposed by a court in a citizens' suit under the Clean Water Act must be made payable to the U.S. treasury. *Gwaltney,* 484 U.S. at 53, 108 S.Ct. at 379 ("If the citizen prevails in such an action, the court may order injunctive relief and/or impose civil penalties payable to the United States Treasury"); *Middlesex County Sewerage Authority v. National Sea Clammers Ass'n,* 453 U.S. 1, 14 n. 25, 101 S.Ct. 2615, 2623 n. 25, 69 L.Ed.2d 435 (1981) ("Under the [Federal Water Pollution Control Act], civil penalties, payable to the Government, also may be ordered by the court. § 505(a), 33 U.S.C. § 1365(a).") *See also Sierra Club v. Chevron, USA, Inc.,* 834 F.2d 1517, 1522 (9th Cir.1987) ("any penalties recovered from [a citizens' suit] are paid into the United States Treasury") (quoting *Chesapeake Bay Foundation v. Bethlehem Steel Corp.,* 608 F.Supp. 440, 449 (D.Md.1985)).[5] Because the monetary payments required under the proposed consent judgment will not go to the U.S. treasury, the district court was correct in concluding that if they are "civil penalties" they violate the Clean Water Act.[6]

---

3. Our decision to find jurisdiction is not precluded by our prior decision in *EEOC.* In *EEOC* we dismissed an appeal for want of jurisdiction where the appellant challenged a district court's refusal to enter a consent decree in an age discrimination suit. 796 F.2d at 318. We concluded that the denial of the proposed judgment did not have the practical effect of denying an injunction because injunctive relief was sought by the appellee and not by the appellant. *Id.* at 316. As an alternative basis for dismissing the case, we stated that Pan Am failed to demonstrate that it would suffer "serious, perhaps irreparable harm." *Id.* at 317. Unlike *Carson* and the instant appeal, the denial of the proposed consent judgment in *EEOC* did not attack the underlying premise of the settlement. Rather, the denial focused primarily on the inadequacy of the monetary settlement. *Id.*

4. Because we find jurisdiction under 28 U.S.C. 1292(a)(1), we need not decide whether the district court's decision was a collateral order appealable under the exception announced in *Cohen v. Beneficial Indus. Loan Corp.,* 337 U.S.

541, 546, 69 S.Ct. 1221, 1225, 93 L.Ed. 1528 (1949). *See also Coopers & Lybrand v. Livesay,* 437 U.S. 463, 468, 98 S.Ct. 2454, 2457, 57 L.Ed.2d 351 (1978).

5. The district court's suggestion that the consent decree requires ECD to pay civil penalties to the Oregon Water Quality Program is misplaced. The United States correctly points out that payment to a state entity does not meet the requirement that civil penalties be paid to the U.S. treasury. If the payment is deemed a "civil penalty," a court may only order that it be paid to the U.S. treasury.

6. The United States makes much of the fact that the proposed payments are also inconsistent with the Environmental Protection Agency's (EPA) settlement policy. That policy is irrelevant to this appeal. The EPA's "Clean Water Act Penalty Policy for Civil Settlement Negotiations" (1986) states that the EPA "has accepted consent decree provisions which allow the reduction of a civil penalty assessment in recognition of the

■ While it is clear that a court cannot order a defendant in a citizens' suit to make payments to an organization other than the U.S. treasury, this prohibition does not extend to a settlement agreement whereby the defendant does not admit liability and the court is not ordering non-consensual monetary relief. "[C]onsent decrees bear some of the earmarks of judgments entered after litigation. At the same time, because their terms are arrived at through mutual agreement of the parties, consent decrees also closely resemble contracts." *Local No. 93, Int'l Ass'n of Firefighters, AFL–CIO v. City of Cleveland,* 478 U.S. 501, 519, 106 S.Ct. 3063, 3073, 92 L.Ed.2d 405 (1986).

■ Because of the unique aspects of settlements, a district court should enter a proposed consent judgment if the court decides that it is fair, reasonable and equitable and does not violate the law or public policy. *See Citizens for a Better Environment v. Gorsuch,* 718 F.2d 1117, 1125–26 (D.C.Cir.1983), *cert. denied,* 467 U.S. 1219, 104 S.Ct. 2668, 81 L.Ed.2d 373 (1984); *cf. Davis v. City and County of San Francisco,* 890 F.2d 1438, 1444–45 (9th Cir.1989) (district court reviews proposed consent decree in a class action suit brought under Fed.R.Civ.P. 23(c) to determine whether the settlement is "fundamentally fair, adequate and reasonable") (quoting *Officers for Justice v. Civil Serv. Comm'n of the City and County of San Francisco,* 688 F.2d 615, 625 (9th Cir.1982), *cert. denied,* 459 U.S. 1217, 103 S.Ct. 1219, 75 L.Ed.2d 456 (1983)).

In *Local No. 93,* the Supreme Court upheld a district court's order entering a consent decree that went beyond the type of relief provided by the civil rights statute under which the suit had been brought. 478 U.S. 501, 106 S.Ct. 3063. The Court stated that "a federal court is not necessarily barred from entering a consent decree merely because the decree provides broader relief than the court could have awarded after a trial." 478 U.S. at 525, 106 S.Ct. at 3077. As long as the consent decree comes "'within the general scope of the case made by the pleadings,'" furthers "the objectives upon which the law is based," and does not "violate[ ] the statute upon which the complaint was based," the parties' agreement may be entered by the court. *Id.* at 525–26, 106 S.Ct. at 3077–78 (quoting *Pacific R. Co. v. Ketchum,* 101 U.S. 289, 297, 25 L.Ed. 932 (1880) (citations omitted)).

■ The consent decree agreed to by the Sierra Club and ECD comes within the scope of the pleadings, furthers the broad objectives upon which the complaint was based and does not violate the Clean Water Act. The Sierra Club's complaint was based upon the allegation that ECD was not in compliance with the Clean Water Act and was polluting the Oregon waters. The district court found that compelling ECD to comply with the terms of its permit or cease all discharges is "in the public interest." *Sierra Club,* 703 F.Supp. at 878. It also acknowledged that the environmental organizations that will receive funds under the proposed consent judgment "will apply the money in ways that will help further the goals of the Act." *Id.* Moreover, as the court noted, "Congress 'encourages' settlements of this type 'which preserve the punitive nature of enforcement actions while putting the funds collected to use on behalf of environmental protection.'" *Id.* at 877 (quoting H.R.Conf.Rep. No. 1004, 99th Cong., 2d Sess. 139 (1986)).[7]

defendant's undertaking an environmentally beneficial 'mitigation project.'" Because the policy also states that it is intended only to guide the EPA in cases *prosecuted by the government,* we need not decide whether the payments required under the proposed consent decree in a citizens' suit are within the four corners of the EPA's policy.

7. Consent decrees, such as the one at issue here, are also consistent with current practice. Courts throughout the country have entered consent judgments in civil suits requiring defendants to make payments to various environmental organizations and, in some cases, the defendants have not been required to pay penalties to the U.S. Treasury. *See, e.g., Friends of the Earth v. Eastman Kodak Co.,* 656 F.Supp. 513 (W.D.N.Y.), *aff'd,* 834 F.2d 295 (2nd Cir.1987) ($49,000 to the Conservation Foundation "for projects reasonably related to the protection of water quality"); *Sierra Club v. Port Townsend Paper Corp.,* Civ. No. C87–316C (W.D.Wash. Oct. 28, 1988) ($137,500 to the Nature Conservancy "to

The Clean Water Act also does not render the proposed consent judgment unlawful. The provisions of the Act provide no limitation on the type of payments to which parties to citizens' suits can agree in a settlement. There is no indication that where a defendant agrees to a settlement it must also agree to pay penalties to the treasury. Likewise, the Act's legislative history reveals no Congressional intent that private parties be precluded from entering into settlements which do not require the defendant to tender civil penalties to the United States.

██ In 1987, Congress amended the Act to give the government more power to oversee and monitor the entry of consent judgments in citizens' suits. *See* 33 U.S.C. § 1365(c)(3). The new provision prohibits a court from entering proposed consent judgments in citizens' suit where the United States is not a party until forty-five days after the Attorney General and the administrator of the EPA receive copies of the proposed consent. Congress did not take this opportunity to comment on the type of relief permitted in citizens' suit settlements and did not indicate that the settlements must include payment of civil penalties to the U.S. treasury. *See* 33 U.S.C. § 1365(c)(3); Pub.L. No. 100–4, Title V § 505(c), 101 Stat. 76 (Feb. 4, 1987).[8]

We therefore find that the proposed consent decree furthers the purpose of the statute upon which the complaint was based and does not violate its terms or policy. The payments to the environmental organizations are not in recognition of liability under the Clean Water Act and are not civil penalties. No liability was ever

judicially established. The district court abused its discretion in failing to enter the proposed consent judgment. *See Citizens for a Better Environment,* 718 F.2d at 1125–26 (district court should enter proposed consent decree if it is fair, reasonable and equitable and does not violate the law or public policy). Upon remand, the district court should enter the consent decree proposed by the Sierra Club and ECD and award costs and attorney fees pursuant to the decree.

## ATTORNEY FEES

██ The Sierra Club's request for attorney's fees under section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d), and the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d) is denied. ECD did not participate in this appeal and thus cannot be ordered to pay fees. Likewise, the United States is not a party to this suit and fees against it may not be awarded under the EAJA. *See* 28 U.S.C. § 2412(d) (costs "may be awarded to the prevailing party in any civil action brought by or against the United States ...").

REVERSED and REMANDED.

---

be used directly for purposes of improving environmental and water quality); *Natural Resource Defense Counsel v. Duquesne Light Co.,* Civ. No. 87–0511 (D.Pa. Aug. 14, 1987) ($40,000 to Western Pennsylvania Conservancy with penalties generated by future violations going to state clean water fund); *Natural Resource Defense Council v. Pennsylvania Electric Co.,* Civ. Nos. 87–0512 & 87–0513 (W.D.Pa. Aug. 25, 1987) (monies paid to Pennsylvania Clean Water Fund).

**8.** The legislative history indicates only that Congress rejected a clause specifically disclaiming that the United States could be bound by judgments in cases to which it is not a party because

the proposed clause restated current law and was unnecessary. *See* Remarks of Senator Chafee, 100th Cong., 1st Sess., *reprinted at* 133 Cong.Rec. S737 (Jan. 14, 1987). Accordingly, the United States would not be bound by the proposed consent judgment in this action and could bring its own enforcement action at any time. We note that on October 7, 1988, the Assistant Attorney General notified the court in this action that it was not bound by the proposed consent judgment. Letter of Roger J. Marzulla, Assistant Attorney General, Oct. 7, 1988.