**ATLANTIC STATES LEGAL FOUNDA-
TION, INC. and Rainbow Alliance for a
Clean Environment, Inc., Plaintiffs,**

v.

**SIMCO LEATHER CORP., Defendants.**

No. 90–CV–750.

United States District Court,
N.D. New York.

Feb. 7, 1991.

Peter Henner, Albany, N.Y., for plaintiffs.

Whiteman, Osterman & Hanna (Philip H. Dixon, of counsel), Albany, N.Y., for defendants.

U.S. Dept. of Justice, Environment & Natural Resources Div., Policy, Legislation & Sp. Litigation Section (Richard B. Stewart, Charles J. Sheehan, Asst. Attys. Gen., of counsel), Washington, D.C.

## MEMORANDUM—DECISION AND ORDER

CHOLAKIS, District Judge.

This action, brought under 33 U.S.C. § 1365, the "citizen suits" provision of the Federal Water Pollution Control Act ("Clean Water Act" or "Act"), *id.* §§ 1251–1387, alleges ongoing violations by defendant Simco Leather Corporation of federal pre-treatment standards and defendant's wastewater discharge permit, issued by the Gloversville–Johnstown Joint Sewer Board. It is claimed that these violations contribute to and increase violations allegedly committed by the Gloversville–Johnstown Wastewater Treatment Facility (into which defendant's discharges flow) of the terms of its consent decree in *United States of America and State of New York v. Gloversville–Johnstown Joint Sewer Board, et al.,* No. CV 84–W–259, and its State Pollutant Discharge Elimination System ("SPDES") permit issued by the New York State Department of Environmental Conservation. The Wastewater Treatment Facility discharges into the Cayudetta Creek, a tributary of the Mohawk River.

Presently before this Court for consideration is a proposed Consent Decree, the terms of which call for payment by defendant of $2,120.00 to the United States Treasury, as well as $8,480.00 to the State University of New York at Oswego for the following purpose:

to examine existing water quality conditions in the Mohawk River and to examine factors affecting water quality in the Mohawk River. The focus of such study shall be upon impacts of stormwater run-off and non-point source contributions rather than point source discharges holding current SPDES permits.

Consent Decree par. 7(B). Predictably, the proposed decree, by its terms, does not constitute any admission of wrongdoing on the part of defendant.

## The Clean Water Act

In enacting the Clean Water Act, Congress declared that "[t]he objective of this chapter is to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). In furtherance of these broad remedial goals, the Act authorizes "any citizen [to] commence a civil action on his own behalf ... (1) against any person ... who is alleged to be in violation of (A) an effluent standard or limitation under this chapter." *Id.* § 1365(a)(1). Such citizen suits may not, however, be commenced where the federal or state government has already commenced an action to redress the alleged violations of the Act. *Id.* § 1365(b)(1)(B).

The Act provides for the United States' ("Government") participation in citizen suits. At least sixty days prior to the commencement of such action, a citizen plaintiff must give notice to the United States Environmental Protection Agency ("EPA" or "Administrator"), the state in which the alleged violation occurs, and the alleged violator. *Id.* § 1365(b)(1)(A). The Government may intervene as a matter of right, *id.* § 1365(c)(2), and no consent judgment may be entered in an action in which the Government is not a party prior to 45 days following the receipt of a copy of the proposed consent judgment by the Attorney General and the Administrator. *Id.* § 1365(c)(3).

In the present case, plaintiffs have complied with all statutory prerequisites. All pre-suit notices were served and, as the Act requires, copies of the proposed decree were forwarded to the Attorney General and the Administrator. The 45 day period following their receipt of the proposed decree, during which no consent judgment could be entered, expired on November 8, 1990.

## Discussion

The Government, objecting to the proposed consent decree by way of submissions to the Court filed on November 8, 1990, argues that there is no nexus between the harm caused by defendant's alleged violations and that portion of the remedy calling for a study of the non-point source pollution of the Mohawk River.[1] The Government claims that, absent such nexus, the remedy violates the EPA's "Clean Water Act Penalty Policy for Civil Settlement Negotiations" ("Settlement Policy"), and fails to further the purposes of the Act.[2]

---

1. The statutory provision requiring that notice of the proposed consent decree be provided to the Attorney General and the Administrator, 33 U.S.C. § 1365(c)(3), is silent as to whether the Government thereby has the right to submit objections to the Court, or whether the Court must consider such objections while deciding whether to approve a proposed consent decree. Plaintiffs argue that the provision merely allows the Government time to decide whether to intervene in the action, which it may do as of right at any time. *See id.* § 1365(c)(2).

   In light of this Court's approval of the proposed consent decree, it need not pass on the issue of any implied purposes of the 45–day notice provision. The Court, having considered the Government's objections, has found them to be without merit.

2. Since the Government does not claim that the proposed payment for the study is a "civil penalty," the issue of whether such penalty may be paid other than to the United States Treasury is not before the Court. *See, e.g., Sierra Club v. Electronic Controls Design,* 909 F.2d 1350, 1354 (9th Cir.1990) (*"Sierra Club"*) ("[I]f the payments required under the proposed consent decree are civil penalties within the meaning of the [Act], they may be paid only to the U.S. Treasury."); *Public Interest Research Group of New Jersey, Inc. v. Powell Duffryn Terminals, Inc.,* 913 F.2d 64, 81 (3d Cir.1990), *petition for cert. filed,* 59 U.S.L.W. 3432 (U.S. November 30, 1990) (No. 90–867) (*"Powell Duffryn"*) (Congress intended that civil penalties be paid to the Treasury); *Atlantic States Legal Foundation v. Tyson Foods, Inc.,* 897 F.2d 1128, 1131 n. 5 (11th Cir.1990) (penalties are to be paid to the Treasury and not to the plaintiff who instituted the § 1365 suit).

   In any event, these courts have also held that, even if a court cannot order that civil penalties be paid other than to the Treasury, the parties to a lawsuit are free to determine settlement terms. *See, e.g., Sierra Club,* 909 F.2d at 1354 ("When a defendant agrees before trial to make payments to environmental organizations without admitting liability, the agreement is simply part of an out-of-court settlement which the

■ The parties respond that the proposed study satisfies any alleged nexus requirement contained in the Settlement Policy and that this Court is not, in any event, bound by the Settlement Policy. The parties are correct on both counts. The Settlement Policy, although due some deference as a product of the administrative agency charged by Congress with the responsibility to oversee application of the Act, is not binding on this Court. By its own terms, it is "intended solely for the guidance of government personnel," *see* Settlement Policy at 8, is "not intended, and cannot be relied upon to create any rights, substantive or procedural, enforceable by any party in litigation with the United States," *id.* and allows the EPA "to act at variance with these policies and procedures and to change them at any time without public notice." *Id.; see Friends of the Earth v. Archer Daniels Midland Co.,* 31 ERC 1779, 1781, No. 84–CV–413 (N.D. N.Y. July 19, 1990).

In addition, the Settlement Policy is intended to guide the EPA in cases it is prosecuting, which is not the case here. *See* Settlement Policy at 2; *see Sierra Club,* 909 F.2d at 1354–1355 n. 6. Finally, unlike other provisions of the Settlement Policy, the criteria utilized by EPA when considering "mitigation projects" such as the study here proposed are framed in terms manifesting EPA discretion. For example,

the activity is *most likely* to be an acceptable basis for mitigating penalties if it closely addresses the environmental effects of the defendant's violation.

*Preferably,* the project will address the risk or harm caused by the violations at issue.

Settlement Policy § V(2) (emphasis added). Although the policy evinces a *preference* for mitigation projects that closely address the effects of a defendant's violation, EPA is not precluded from approving mitigation projects where there is no such "close relationship."

parties are free to make."); *Powell Duffryn,* 913 F.2d at 81–81 n. 32 ("a party may compromise its claim however it sees fit").

■ In any event, a review of the proposed consent decree reveals that it comports with the Settlement Policy. The proposed study, of non-point source pollution of the Mohawk River, is closely related to the violations alleged in the complaint in this action. Defendant's discharges contribute to the overloading of the Gloversville–Johnstown Wastewater Treatment Facility, which discharges into the Cayudetta Creek, which in turn empties into the Mohawk River.

This Court accepts plaintiffs' argument that a study of point sources would provide little new information, given that all point sources are subject to state permits, and therefore the amount of pollutants discharged by each point source is already well documented. In addition, the Court accepts plaintiffs' assertion that part of the value of the proposed study lies in its establishment of a baseline level of pollution of the Mohawk River by non-point sources, information that apparently has never before been gathered. Such information can only facilitate greater knowledge of the water quality of the Mohawk and aid the amelioration of water pollution, which is, after all, the objective of the Act.

In addition, the fact that the proposed study encompasses portions of the Mohawk that are upstream of the mouth of Cayudetta Creek does not render the study less related to the environmental harm alleged in the complaint. The Mohawk is sufficiently "next to" and "close to" the Cayudetta Creek to satisfy any "nexus" requirement alleged by the EPA to be lacking. *See, e.g., Pennsylvania Environmental Defense Foundation v. Bellefonte Borough,* 718 F.Supp. 431, 437 (M.D.Pa.1989) (rejecting a proposed consent decree where project contained "no explicit requirement that the [funding for the project] be used for projects *in, next to, or close to* [the polluted waterway]." (emphasis added).

Finally, the type of project here proposed was clearly contemplated, and approved, by

It is noteworthy that the proposed consent decree in this case does provide, in addition to the payments for the study, that defendant pay $2,120.00 to the U.S. Treasury.

**62**

Congress during passage of the Water Quality Act of 1987, amending the Clean Water Act:

In certain instances settlements of fines and penalties levied due to NPDES permit and other violations have been used to fund research, development and other related projects which further the goals of the Act. *In these cases, the funds collected in connection with these violations were used to investigate pollution problems other than those leading to the violation.* Settlements of this type preserve the punitive nature of enforcement actions while putting the funds collected to use on behalf of environmental protection. *Although this practice has been used on a selective basis, the conferees encourage this procedure where appropriate.*

H.R.Conf.Rep. No. 1004, 99th Cong., 2d Sess. 139 (1986) (emphasis added).

Since the proposed study is described with sufficient precision, is closely related to the harm alleged in the complaint, and furthers the objectives of the Act, this Court hereby approves its terms.

IT IS SO ORDERED.