**HAWAII'S THOUSAND FRIENDS, LIFE OF THE LAND, INC.; James E. Hearst; Betty Hearst; John Weil; Victoria Creed; Richard A. Wheelock; Patricia Bostwick; Patrick Lane; Philip M. Tansey; and Carolyn Tansey, Plaintiffs,**

**v.**

**The CITY AND COUNTY OF HONOLULU; The Department of Public Works of the City and County of Honolulu; John Does 1–5; Jane Does 1–5; Doe Entities 1–5 and Doe Governmental Entities 1–5, Defendants.**

**Civ. No. 90–00835 DAE.**

United States District Court,
D. Hawaii.

June 25, 1993.

---

Fred Paul Benco, Honolulu, HI, for plaintiff.

Sandra A. Simms, Corp. Counsel, City & County of Honolulu, Ronald B. Mun, Corp. Counsel, City and County of Honolulu. HI, Nancy K. Stoner, U.S. Dept. of Justice, Environment and Natural Resources Div., Washington, DC, for defendants.

## ORDER APPROVING AND ENTERING CONSENT DECREE

DAVID ALAN EZRA, District Judge.

The parties to this action have consented to entry of a Consent Decree[1] and have requested the court's approval and entry thereof. Pursuant to 33 U.S.C. § 1365(c)(3), at least 45 days have elapsed since the United States Attorney General was served on February 11, 1993, and the Administrator of the United States Environmental Protection Agency was served on February 17, 1993, with copies of the Consent Decree, Complaint and Answer.

Upon motion of the plaintiffs, as joined in by defendants, the court has reviewed the Consent Decree and fully considered all comments received to date from the parties. Because the court finds the Consent Decree to be (1) fair, adequate, and reasonable, (2) consistent with applicable law, and (3) protective of the public interest, and good cause appearing, the Consent Decree is hereby APPROVED AND ENTERED.

## BACKGROUND

Plaintiffs filed this citizens' suit, pursuant to 33 U.S.C. § 1365, alleging that defendants violated the Clean Water Act (CWA or Act) by discharging dangerous pollutants into Kaelepulu Stream, Enchanted Lakes, and Kailua Bay. On October 20, 1989, prior to filing suit, plaintiffs served their Notice of Intent to Sue on the defendants, as well as the Hawaii State Department of Health (DOH) and the Regional Administrator of the Environmental Protection Agency (EPA), in accordance with 33 U.S.C. § 1365(b)(1)(A). Neither DOH nor EPA moved to intervene. There are, however, two other actions relevant to this proceeding.

DOH issued its own Notice and Finding of Violation to the defendants regarding the Enchanted Lakes Sewage Pump Station on December 22, 1989. Subsequently, on April 27, 1990, DOH and defendants entered into a Consent Agreement which directed defendants to pay certain fines and undertake certain mitigation projects at an approximate cost of $28.4 million.

Additionally, EPA served a Finding of Violation and Order for Compliance on the City and County of Honolulu (the City) on November 27, 1991. The EPA's enforcement action encompasses the City's island-wide wastewater collection system for the time

---

1. The Consent Decree is appended hereto as Exhibit A.

period between August 1, 1986 through July 31, 1991. As part of EPA's Findings, an evaluation of the City's pump stations was performed. One of the pump stations studied was the Enchanted Lakes Pump Station. EPA and the City are currently negotiating their own settlement.

Plaintiffs filed their first amended complaint in this action on December 12, 1990. In their complaint, they set forth nine requests in their prayer for relief, none of which were expressly covered by the DOH/defendants' consent decree. On July 23, 1992, the court granted plaintiffs' motion for partial summary judgment on the issue that the defendants discharged raw sewage into Kaelepulu Stream without a National Pollutant Discharge Elimination System (NPDES) permit. 806 F.Supp. 225

In February 1993, plaintiffs and defendants entered into the subject Consent Decree to settle this action. In the proposed Consent Decree, defendants agreed to:

1. Install a new, "force main" sewer system from the pumping station to the Keolu Drive intersection.[2]

2. Provide tanker trucks at the Enchanted Lakes Pump Station to haul away excess sewage and, if that is insufficient, to construct a permanent above-ground 8,000–gallon capacity storage tank.

3. Hold a public informational meeting concerning the terms of the Consent Decree.

4. Allow plaintiffs to inspect all studies, reports, surveys, and proposals concerning the Enchanted Lakes Pump Station and the new "force main" system.

5. Maintain a systematic reliable warning system for the area where Kaelepulu stream empties into Kailua Bay.

6. Pay to community organizations, if they should violate the Consent Decree, fines of up to $25,000 per incident of illegal discharge, as determined by the court, to be used for studies on preserving water resources on Oahu and/or removing pollutants from Oahu's water resources.

7. Pay plaintiffs' attorney's fees, not to exceed $75,000.

Section 505(c)(3) of the CWA, 33 U.S.C. § 1365(c)(3), requires that the United States be given 45 days to review a proposed consent judgment in an action to which it is not a party. If it finds that the proposed judgment is not in accordance with the Act, the United States may object. On April 2, 1993, the United States submitted objections to the proposed Consent Decree. The United States objects on the basis that the decree does not require defendants to pay civil penalties to the United States Treasury. The United States requests that this court not enter the Consent Decree or that the decree be amended to provide for a payment of $250,000 to the Treasury.

## DISCUSSION

■ The Ninth Circuit, in *Sierra Club v. Electronic Controls Designs*, 909 F.2d 1350, 1355 (9th Cir.1990), ruled:

> Because of the unique aspects of settlements, a district court should enter a proposed consent judgment if the court decides it is fair, reasonable or equitable and does not violate the law or public policy.

The court went on to note that as long as the consent decree comes "within the general scope of the case made by the pleadings," furthers "the objectives upon which the law is based," and does not "violate the statute upon which the complaint was based," the agreement should be entered by the court. *Id.* (quoting *Local No. 93, Int'l Ass'n of Firefighters v. City of Cleveland*, 478 U.S. 501, 525–26, 106 S.Ct. 3063, 3076–77, 92 L.Ed.2d 405 (1986)).

The Consent Decree here is fair, reasonable, and equitable. Further, it comes within the general scope of the pleadings, furthers the objectives upon which the complaint was filed, and does not violate the CWA. The United States, however, argues that the CWA, and the policies behind that statute, mandate a civil penalty—to be paid to the U.S. Treasury—whenever liability is found.

---

**2.** The City began construction of the force main months after plaintiffs filed this suit, and the system is to be dedicated to the City by the contractor in the near future.

The CWA provides that district courts in citizens' suits "shall have jurisdiction ... to apply *any appropriate* civil penalties under Section 1319(d) of this title." 33 U.S.C. § 1365(a) (emphasis added). Section 1319(d), the government's enforcement provision, provides that "Any person who violates [this title] shall be subject to a civil penalty...." Although § 1319(d) uses the word *shall,* the statute reads "shall be subject to" not "shall pay." Because of the potential ambiguity in this language, courts are split over whether the decision to impose a civil penalty in a citizens action is discretionary. *See generally United States v. Winchester Mun. Utilities,* 944 F.2d 301, 306 (6th Cir.1991).

■ Although the question of whether consent decrees must provide for civil penalties where liability has been determined has never been answered by the Ninth Circuit, it appears that existing Ninth Circuit law dictates that this court answer the question no. In *Electronic Controls,* plaintiffs brought a private citizens' suit under the CWA. Before any liability had been determined, the parties filed a stipulation for entry of a consent decree. The defendants did not admit any CWA violation, but agreed to pay $45,000 to various private environmental organizations for their efforts to maintain and protect water quality. The United States filed an objection to the proposed consent judgment, arguing that it was illegal under the CWA because it did not require defendants to pay civil penalties to the U.S. Treasury. *Electronic Controls,* 909 F.2d at 1352.

The district court concluded that the payments required under the agreement were civil penalties and thus refused to enter the consent decree because civil penalties must be paid to the U.S. Treasury. *Id.* Although the Ninth Circuit agreed that civil penalties, *if assessed,* must be paid to the Treasury, *see Gwaltney of Smithfield v. Chesapeake Bay*

*Found.,* 484 U.S. 49, 53, 108 S.Ct. 376, 379, 98 L.Ed.2d 306 (1987), the court held that the payments ordered by the consent decree were not civil penalties because no violation of the CWA had been found or admitted. *Id.* at 1354. Therefore, a consent decree *can be entered* even if does not provide for a civil penalty paid to the Treasury.

Nevertheless, the United States argues that because the consent decree in *Electronic Controls* was not based on any finding or admission of liability, the case implicitly stands for the proposition that once a finding of liability has been made, the court *must* impose a civil penalty. *Electronic Controls,* however, implies just the opposite. The court noted that "Congress 'encourages' settlements of this type 'which preserve the punitive nature of enforcement actions while putting the funds collected to use on behalf of environmental protection.'" *Id.* at 1355 (citing H.R.Conf.Rep. No. 1004, 99th Cong., 2d Sess. 139 (1986)). Additionally, the court cited numerous cases where courts have entered consent judgments in civil suits that required defendants to make payments to various environmental organizations but not to pay penalties to the Treasury. *Id.* at 1355 n. 7.

In its discussion of the CWA, the *Electronic Controls* court stated:

> The provisions of the [Clean Water] Act provide no limitation on the type of payments to which parties to citizens' suits can agree in a settlement. There is no indication that where a defendant agrees to a settlement it must also agree to pay penalties to the treasury. Likewise, the Act's legislative history reveals no Congressional intent that private parties be precluded from entering into settlements which do not require the defendant to tender civil penalties to the United States.[3]

---

3. The House Report to the 1972 Amendments explains that under the citizen suit provision, "[T]he courts *are authorized* to apply appropriate civil penalties under Section 309(d)." H.R.Rep. No. 911, 92d Cong., 2d Sess. 133 (1972) (emphasis added). Similarly, the Senate Report states that Section 505 *"would allow* the courts to impose civil penalties provided as a result of actions brought by citizens," and later makes reference to *"any* penalties imposed." S.Rep. No. 414, 92d Cong., 1st Sess. 133 (1972) (emphasis added), U.S.Code Cong. & Admin.News 1972, p. 3668.

In 1987, Congress amended the Act to give the government more power to oversee and monitor the entry of consent judgments in citizens' suits. *See* 33 U.S.C. § 1365(c)(3).... Congress did not take this opportunity to comment on the type of relief permitted in citizens' suit settlements and did not indicate that the settlements must include payment of civil penalties to the U.S. treasury.

*Id.* at 1356 (footnote added).

The United States has cited the court to only one case where the district court rejected a consent decree in a citizens' enforcement action because the proposed consent judgment failed to include a civil penalty. *See Friends of the Earth v. Archer Daniels Midland*, 780 F.Supp. 95 (N.D.N.Y.1992). In light of the fact that this case is not within our circuit, appears to be contrary to the position of the Ninth Circuit, and ignores the clear evidence from the statute and its legislative history that civil penalties in citizens' suits are discretionary, the court does not feel compelled to follow it. Additionally, a number of district courts have stated that the decision whether to impose civil penalties is discretionary. *See Friends of the Earth v. Eastman Kodak Co.*, 656 F.Supp. 513 (W.D.N.Y.) (citizens' suit—consent decree provided for payment to an environmental organization, but no civil penalties), *aff'd*, 834 F.2d 295 (2d Cir.1987); *Pymatuning Water Shed Citizens v. Eaton*, 506 F.Supp. 902 (W.D.Pa.1980) (citizens suit—no civil penalty imposed even though liability found), *aff'd*, 644 F.2d 995 (3d Cir.1981); *Michigan v. City of Allen Park*, 501 F.Supp. 1007, 1024 (E.D.Mich.1980) (state enforcement action—remedy for violation was injunction requiring city to finance a mitigating project), *aff'd*, 667 F.2d 1028 (6th Cir.1981), *cert. denied*, 456 U.S. 927, 102 S.Ct. 1974, 72 L.Ed.2d 443 (1982); *United States v. City of Providence*, 492 F.Supp. 602, 608 (D.R.I.1980) (EPA enforcement action—penalty imposed only if defendant municipality violated consent de-

cree); *United States v. City of Detroit*, 476 F.Supp. 512 (E.D.Mich.1979) (EPA enforcement action—no penalty imposed under consent decree), *subsequent orders modified*, 720 F.2d 443 (6th Cir.1983).

The United States relies heavily on the policy that civil penalties are designed to: (1) punish violators; (2) deter violations; and (3) disgorge profits. *See Tull v. United States*, 481 U.S. 412, 423, 107 S.Ct. 1831, 1838 (1987). However, the United States ignores the fact that the Consent Decree in this matter fulfills these policies. The Consent Decree is one of *three* negotiated by defendants.[4] In the proposed Consent Decree at issue here, defendants have agreed to undertake several curative actions, at great cost to defendants, that would benefit the community and the environment. Additionally, any violations of the Consent Decree could result in fines of up to $25,000 per incident.

Most importantly, however, the United States overlooks that the defendant here is a municipality. Any penalty would simply be borne by local taxpayers, who already shoulder an enormous burden under the two consent decrees. For this express reason, other district courts have refused to impose civil penalties where the defendant is a public entity. In *Proffitt v. Lower Bucks County Joint Mun. Auth.*, No. 86–7220, 1988 WL 48552, 1988 U.S.Dist.LEXIS 4381 (E.D.Pa. May 12, 1988), *aff'd*, 908 F.2d 963 (3d Cir. 1990), the court noted:

> The defendant here is not a commercial or private entity operating for profit, but instead it is a public body run by members of the community to serve its service area's needs. Consequently, decision-making may not be predominantly profit motive oriented as would be the case with a commercial or private entity.... Defendant should not be subject to a civil penalty in light of its significant investment to insure future compliance with the Act. The purpose of the Clean Water Act is to restore

---

4. The City is currently negotiating settlement with EPA regarding their county-wide Notice of Violation.

and maintain the nation's waters. 33 U.S.C. § 1251(a). Punishing an entity that has sought long, hard and with significant monetary resources to comply with the Act and its underlying purpose with the imposition of a civil penalty would not make sense.

*Id.,* 1988 WL 48552 at *9, 1988 U.S.Dist.LEXIS 4381 at *24–25. *See also City of Providence,* 492 F.Supp. at 610 (refusing to assess a fine in a contempt proceeding because it would have diminished the resources available for compliance and punish the taxpayers who were not responsible).

No public purpose would be served by requiring the parties to agree that defendants must pay to the United States, who is not a party to this action, a civil penalty. The parties have made extended settlement efforts, have reached an agreement that is in the interests of the community and the environment, and have tailored their agreement to meet the mandates of the CWA. Furthermore, the United States was informed of the pendency of this action and did not choose to intervene. As the court in *Electronic Controls* noted, "the United States would not be bound by the proposed consent judgment in this action and could bring its own enforcement action at any time." 909 F.2d at 1356 n. 8. In fact, EPA has a pending administrative enforcement action that covers the Enchanted Lakes Pump Station. EPA and the City currently are in the process of negotiating settlement, and EPA is certainly free to seek fines in that action.

## CONCLUSION

For the reasons stated above, the court APPROVES AND ENTERS the Consent Decree appended hereto as Exhibit A.

IT IS SO ORDERED.

EXHIBIT A

Fred Paul Benco 2126

Linda S. Birn 4055

3408 Century Square

1188 Bishop Street

Honolulu, Hawaii 96813

Telephone: 523–5083

Attorneys for Plaintiffs

Ronald B. Mun 1205

Corporation Counsel

Duane W.H. Pang 4176

Deputy Corporation Counsel

City and County of Honolulu

Honolulu, Hawaii 96813

Telephone 523–4274/523–4096

Attorneys for Defendants

City and County of Honolulu

and The Department of Public

Works of the City and County

of Honolulu

In the United States District Court

For the District of Hawaii

Hawaii's Thousand Friends; Life of the Land, Inc.; James E. Hearst; Betty Hearst; John Weil; Victoria Creed, Richard A. Wheelock; Patricia Bostwick; Patrick Lane; Philip M. Tansey; and Carolyn Tansey; Plaintiffs,

vs.

The City and County of Honolulu; The Department of Public Works of The City and County of Honolulu; John Does 1–5; Jane Does 1–5; Doe Entities 1–5 and Doe Governmental Entities 1–5, Defendants.

CIVIL NO. 90–00835 DAE
CONSENT DECREE; ORDER

## CONSENT DECREE

WHEREAS, Plaintiffs HAWAII'S THOUSAND FRIENDS, LIFE OF THE LAND,

JOHN WEIL, VICTORIA CREED, RICHARD A. WHEELOCK, PATRICK LANE, PHILIP M. TANSEY and CAROLYN TANSEY (hereinafter collectively "Plaintiffs") commenced this suit on December 12, 1990 against Defendants CITY AND COUNTY OF HONOLULU and THE DEPARTMENT OF PUBLIC WORKS OF THE CITY AND COUNTY OF HONOLULU (hereinafter "Defendants") alleging violations of the Clean Water Act (33 U.S.C. § 1311 et seq.), specifically that Defendants periodically discharged raw sewage without a NPDES permit into Kaelepulu Stream, Enchanted Lake and Kailua Bay in violation of 33 U.S.C. § 1311(a);

WHEREAS, Defendants deny Plaintiffs' claims;

WHEREAS, Judge David A. Ezra of the Federal District Court for the District of Hawaii in his Order Denying City's Motion to Dismiss, Or in the Alternative, for Summary Judgment, and Order Granting Plaintiffs Motion for Partial Summary Judgment filed July 23, 1992, found Defendants liable for discharging raw sewage from the Enchanted Lake Pumping Station without a NPDES permit in violation of 33 U.S.C. § 1311(a) between 1987 through 1991;

WHEREAS, Plaintiffs and Defendants, through their authorized representatives and without trial or final adjudication of the remaining issues of fact or law with respect to Plaintiffs' claims, consent to the entry of this Consent Decree (hereinafter "Decree") to resolve all Plaintiffs' claims against Defendants in Civil No. 90–00835 DAE, including those for violations of 33 U.S.C. § 1311(a) for the period from December 19, 1987 to the effective date of this decree, and Plaintiffs' claims for costs, including attorney's fees and expert witness fees;

WHEREAS, Plaintiffs and Defendants collectively desire to avoid the costs and uncertainties of litigation and to resolve the controversies between them;

NOW, THEREFORE, THE PARTIES HEREBY AGREE AS FOLLOWS:

## I.

### JURISDICTION

This Court has jurisdiction over the parties and the subject matter of this action pursuant to Section 505(a) of the Clean Water Act, 33 U.S.C. § 1365(a)(1)(A) and 28 U.S.C. § 1331 (federal question jurisdiction). Venue is proper in this Court pursuant to Section 505(c)(1) of the Clean Water Act, 33 U.S.C. § 1365(c)(1), and 28 U.S.C. § 1391(b) and (c). The parties waive any and all objections they may have to the Court's jurisdiction to enter and enforce this Consent Decree.

## II.

### STATUTORY CLAIMS

For purposes solely of this Consent Decree, the Complaint herein states claims upon which relief may be granted against Defendants under Section 505 of the Clean Water Act, 33 U.S.C. § 1365.

## III.

### PARTIES' AGREEMENT TO BE BOUND

A. The provisions of this Consent Decree and the Court's Order approving and entering this Decree shall apply to and be binding upon the parties hereto, their respective directors, employees, agents, elected and appointed officers and assigns, and all those persons, organizations, entities, agencies, firms and corporations who are or will be acting in concert or privity with them.

B. Any action taken by any contractor or consultant retained or funded by Defendants to implement Defendants' duties under this Consent Decree shall be considered an action of Defendants for purposes of determining compliance with this Consent Decree. Defendants shall give notice and a true copy of this Consent Decree to any of its successors in interest prior to any transfer of ownership or operation of the Enchanted Lakes Pumping Station ("ELPS") and shall simultaneously notify Plaintiffs of such succession of interest and that such notice and copy have been given by Defendants.

## IV.

### SETTLEMENT TERMS

1. Defendants will provide tank truck(s), with a total capacity of 10,000 gallons (per day), for removal of the first 10,000 gallons of excess inflow of sewage per day. The tank trucks would be available on a continuous basis, i.e., there would be no gaps between the trucks' removal of the excess inflow. The initial truck would be on-site within thirty (30) minutes of a "triggering event." A triggering event is defined as:

a. The wet well depths being four (4) inches above the high-alarm depth, or

b. The flow rate into the Kailua Heights Pumping Station equals the influent line capacity into the Kailua Heights Pumping Station.

Since bypasses will generally occur during hazardous weather and in the evenings, inclement weather and/or hazardous conditions and/or the time of day will not excuse a late tank truck arrival.

Defendants' obligation will be to remove only the first 10,000 gallons of excess inflow per calendar day, from 12:00 midnight to the following 12:00 midnight. For example, if on one day the excess inflow is 8,000 gallons, Defendants must remove all 8,000 gallons without permitting any discharge into Enchanted Lake or Kaelepulu Stream. If on the next day, there is an excess inflow of 13,000 gallons, Defendants must remove the first 10,000 gallons. The remaining 3,000 gallons will be deemed an "Act of God," are not required to be trucked out off site, and may be disposed of as Defendants see fit.

If on the first day in the above example, Defendants permit a bypass of any of the first 8,000 gallons, this will be deemed a violation of this Consent Decree. If on the second day Defendants permits a bypass of any of the first 10,000 gallons, this will be deemed a violation of this Consent Decree.

2. Within eight (8) months of the approval of this Consent Decree by City Council, the City shall have completed (and shall have notified Plaintiffs' counsel in writing of same) the preliminary plans and drawings for a storage tank or tanks having a total 8,000 gallon capacity, to be located at or near the ELPS. This deadline may be extended for good cause shown to Magistrate Francis Yamashita (or a sitting Hawaii federal magistrate).

3. Should any violation occur (as set forth in Paragraph 1 above) Defendants shall, within a reasonable time following the violation, commence actual construction of the storage tank described in Paragraph 2 above. The storage tank construction shall be completed and be operational within a reasonable time (using industry standards). The storage tank shall thereafter remain on site, and operational, for the duration of this Consent Decree.

On and after the date of placing the storage tank into operation, Defendants' obligation will be to remove only the first 8,000 gallons of excess inflow per calendar day. For example, if on one day the excess inflow is 6,000 gallons, Defendants must remove all 6,000 gallons without permitting any discharge into Enchanted Lake or Kaelepulu Stream. If on the next day, there is an excess inflow of 13,000 gallons, Defendants must remove the first 8,000 gallons. The remaining 5,000 gallons will be deemed an "Act of God," are not required to be stored in the storage tank, and may be disposed of as Defendants see fit.

If on the first day in the above example, Defendants permit a bypass of any of the first 8,000 gallons, this will be deemed a violation of this Consent Decree. If on the second day the City permits a bypass of any of the first 8,000 gallons, this will be deemed a violation of this Consent Decree.

4. This Consent Decree shall continue in full force and effect until the 3rd anniversary date following the date of beneficial acceptance of the Akumu Street force main line by Defendant City and County of Honolulu.

5. Defendants shall maintain and leave in place the butterfly valve on the discharge line leading from the ELPS to Enchanted Lake/Kaelepulu Stream.

6. Plaintiffs waive all prior fines against Defendants arising out of the violations found by United States Federal District Court

Judge David A. Ezra's "Order Denying City's Motion to Dismiss, or in the Alternative, for Summary Judgment, and Order Granting Plaintiffs' Motion for Partial Summary Judgment," filed in the U.S. Federal Court for the District of Hawaii on July 23, 1992.

7. Any discharges which constitute violations of this Consent Decree (under Paragraphs 1 and 3 above) will be subject to a maximum fine of $25,000.00 per day per violation, to a maximum total fine of $500,000. Plaintiffs shall move in this Court for the assessment of the fines. The questions of whether violations occurred, or the amount of the fine(s), shall be discretionary for the Court. If any fines are assessed against Defendant(s), the parties hereby agree and stipulate that the amounts of monies constituting the fines shall be paid to a community organization to be determined by the Court in its discretion, such as the Hawaii Community Foundation, or other organization(s) as stipulated to by the parties, for application to or use by grants or donees for study or studies of preserving Oahu's water resources and/or removing pollutants from Oahu's water resources.

8. Within a reasonable time after the entry of this Consent Decree, Defendants shall hold a public informational meeting in the Lanikai/Enchanted Lake/Kailua area regarding this Consent Decree and the specific steps which Defendants are taking to avoid/eliminate bypasses from the ELPS in the future. Notices of this public information meeting shall be published at least once in the Honolulu Advertiser, the Honolulu Star Bulletin, and the Windward Sun Press. Defendants shall make available at the information meeting three officials with the sufficient information and knowledge concerning this Consent Decree and the technical changes at the Enchanted Lake Pumping Station (including the Akumu Street force main) to be able to respond to questions from the public. The information meeting shall be held in the area of Enchanted Lake/Kailua.

9. Defendants shall make available for inspection and copying by Plaintiffs all studies, reports, surveys and proposals, in a reasonable period of time prior to submission for approval to any of the City's departments or City Council, regarding or concerning the Enchanted Lake Pumping Station and the main transmission line leading to and ending at the intersection of South Kalaheo Avenue. The information contained therein shall remain confidential until after its presentation to the City departments or City Council. Said studies and reports shall also include (but not be limited to) any infiltration and inflow studies relating to the ELPS, and any studies regarding the main sewage transmission line leading to and ending at the intersection of South Kalaheo Avenue. The availability of the studies and reports shall be made in writing by Defendants to Plaintiffs' counsel.

10. Notwithstanding the provisions of Paragraph 9 above, and more specifically, Defendants shall provide copies of all bypass reports for the ELPS within seven (7) calendar days of the bypass(es). Copies of all laboratory reports reflecting monitoring or analyses of bypasses at ELPS shall be transmitted to Plaintiffs at the same time said reports are transmitted to the Department of Health, State of Hawaii. During times of bypass(es), Defendants shall monitor the water quality at the juncture where the man-made canal which adjoins the ELPS empties into Enchanted Lake.

11. Defendants shall maintain a systematic and reliable warning system from the ELPS to the mouth of Kaelepulu Stream (where it empties into Kailua Bay). A city employee shall check, at least once per day, that all warning signs are in place and not missing (or otherwise not observable by the public). Defendants shall also maintain a systematic public and media information system which will advise the surrounding communities of bypasses from the ELPS.

12. All parties shall execute a stipulation extending the trial herein six months, to allow for City Council to review and approve/disapprove this Consent Decree.

13. This Consent Decree shall settle all claims in Civil No. 90–00835 DAE including those specific violations of 33 U.S.C. § 1311(a) arising out of Defendants' discharge of raw sewage into Enchanted Lake

and Kaelepulu Stream from the Enchanted Lake Pump Station as found in Judge Ezra's July 23, 1992 Order, for the period up to and including the effective date of this Consent Decree, and shall not be deemed to include or settle any claims arising out of the condition of the sewage collection or transportation system, including treatment facilities, other than the ELPS itself, not included in Civil No. 90–00835 DAE. The Court shall have continuing jurisdiction over this matter until the provisions of this Consent Decree are satisfied. If Plaintiffs prevail on any subsequent legal proceedings in court in this case (by motion, motion to enforce, or any other legal proceeding) Defendants shall reimburse all of Plaintiffs' reasonable attorneys' fees, experts' fees and costs incurred for bringing the further motion or action.

## V.

### ATTORNEYS' FEES AND COSTS

A. Defendants shall pay Plaintiffs' reasonable attorneys' fees, expert fees and all costs, not to exceed $75,000.00. Plaintiffs shall provide Defendants with a summary of the billings of hours incurred by the attorney, all costs and all expert's fees on or before February 15, 1993. If within seven (7) days of submittal of the summaries to Defendants' counsel, Defendants' counsel files any specific objections to hours and costs contained in the summaries, Plaintiffs' counsel shall thereafter immediately submit detailed records of the attorneys fees and costs incurred by Plaintiffs' attorneys to Magistrate Francis Yamashita for *in camera* review. Magistrate Yamashita shall review and decide each of Defendants' specific objections as to the reasonableness of the attorney's fees, expert's fees and costs and render a decision thereon. If Magistrate Yamashita is unavailable to review the above, another Federal Magistrate or Judge may review and decide each of Defendants' objections as to the reasonableness of the fees and costs.

B. Payment of Plaintiffs' attorneys' fees, expert's fees and costs shall be made within thirty days of the Operative Date as defined in Paragraph VI(F) *infra*, by check payable to "The Law Offices of Fred Paul Benco" and hand delivered to Plaintiffs' undersigned counsel at 1188 Bishop Street, Suite 3408, Honolulu, Hawaii.

## VI.

### GENERAL PROVISIONS

A. The undersigned representative(s) of each party certifies that he or she is fully authorized by the party(ies) whom he or she represents to enter into the terms and conditions of this Decree and to bind them legally to it.

B. The parties agree to submit this fully signed Decree to the Court by February 10, 1993. Plaintiffs shall take full responsibility for promptly serving all Federal agency officers and entities as required by 33 U.S.C. § 1365(c)(3). The Consent Decree shall be set for hearing before the Court, if necessary, on the earliest possible date available.

C. The parties agree to jointly, vigorously, and cooperatively use their best efforts to obtain Court approval of this Consent Decree and to brief EPA and DOH on why entry of the Consent Decree is in the best interests of all concerned.

D. The Court shall retain jurisdiction over this matter for the purpose of enabling the parties to this Decree to apply to the Court for any further order that may be necessary to construe, carry out or enforce the terms of this Decree,

E. The terms of this Decree shall not be changed, revised, or modified except by written instrument signed by the parties to this Decree and approved by the Court. The parties shall not be required to go through noticed motion procedures to obtain Court approval thereof, unless so directed by the Court.

F. If the Court approves and enters this Consent Decree, the parties hereby stipulate to an "Operative Date" for its implementation. If the United States, acting through the United States Department of Justice and/or the Environmental Protection Agency, chooses to and successfully intervenes in this case, the "Operative Date" shall be sixty-one days after entry of the Court's Judgment

approving the Consent Decree. In all other circumstances, the "Operative Date" shall be the date of entry of the Court's Judgment approving the Consent Decree. If an appeal of the Court's Judgment approving the Consent Decree is taken, the parties shall jointly oppose any request to stay the terms of this Decree.

G. Notwithstanding any other provisions of this Consent Decree, the parties reserve their rights to apply to the Court, under its continuing jurisdiction, to construe, carry out, or enforce any and all provisions of this Consent Decree.

H. This proposed Consent Decree must be approved by the City Council of the City and County of Honolulu before being submitted to the Court. If the Decree is approved by the City Council on or before January 31, 1993, it must be signed immediately by counsel for the parties and will then be submitted to the Court, as set forth in paragraph VI(B), *supra.* The parties will then jointly execute a written stipulation to remove this case from the Court's active trial calendar. If the City Council does not approve this Consent Decree by January 31, 1993, the proposed Consent Decree is null and void.

DATED: Honolulu, Hawaii, February 8, 1993.

/s/ Fred Paul Benco

Fred Paul Benco

Linda S. Birn

Attorneys for Plaintiffs

/s/ Duane W.H. Pang

Ronald Mun

Duane W.H. Pang

Attorneys for Defendants

The City and County of Honolulu and

The Department of Public Works of the

City and County of Honolulu

/s/ C. Michael Street

C. Michael Street

Director and Chief Engineer

Department of Public Works

City and County of Honolulu

/s/ George Uyema

George Uyema

Chief Engineer

Division of Waste Water Management

Department of Public Works

City and County of Honolulu

